# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| PHYLLIS MARIE HILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-08-212-FHS-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

The claimant Phyllis Marie Hill requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision should be REVERSED and REMANDED.

## Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied.  *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938).  The Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work the claimant can perform existing in significant numbers in the national economy, taking into account her age, education, work experience and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

**Claimant's Background**

The claimant was born on August 16, 1960, and was forty-seven years old at the time of the administrative hearing. She has a high school education and previously worked as a nurse's aide and child care attendant. The claimant alleges she has been unable to work since February 6, 2006, because of diabetes, neuropathy, hypertension, obesity, heart problems, restless leg syndrome, and depression.

**Procedural History**

On February 17, 2006, the claimant protectively filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401- 434, which application was denied. ALJ Lantz McClain conducted a hearing and determined the claimant was not disabled on September 21, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 404.981.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform a full range of light work, *i. e.*, that she could lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday (Tr. 14). The ALJ concluded that although the claimant could not

return to her past relevant work, she was not disabled because she met Rule 202.21 of the Medical-Vocational Guidelines (Tr. 19).

**Review**

The claimant contends that the ALJ erred: (i) by failing to include all her limitations in the RFC determination; and, (ii) by failing to properly analyze her credibility. As part of her first contention, the claimant argues that the ALJ failed to properly consider the opinions of her treating physician Dr. Thomas Trow, M.D. The undersigned Magistrate Judge finds this argument persuasive.

Treatment records reveal that the claimant was first seen at the Northeast Oklahoma Community Health Centers, Inc., in June 2006, and she was noted to be suffering from an improved diabetic ulcer of the left leg and neuropathy (Tr. 218-19). By July 2006, the claimant's ulcer continued to heal, but her neuropathy had worsened even with medication (Tr. 217). When the claimant returned in October and November 2006, the ulcer had worsened causing her leg to swell. She was prescribed an increased dosage of Neurontin and assessed with diabetic ulcers of the left leg, poorly-controlled diabetes, hypertension, and neuropathy (Tr. 215-16). In January 2007, Dr. Trow found the claimant had a marked decrease in sensation in the mid-calf of her legs to her feet, nil ankle jerks, and an abnormal gait. He assessed her with diabetes, hypertension, severe diabetic peripheral neuropathy, chronic venous insufficiency of the lower extremities, and cardiomyopathy (left greater than right) by history and physical, *i. e.*, the claimant exhibited exertional dyspnea and gallop and arterial cardia. He recommended the claimant undergo further cardiac testing with a

specialist. Dr. Trow opined that the claimant was "permanently and totally disabled by the poor condition of her [left] lower extremity which would benefit from optimal care but w[ould] never be functionally normal nor allow her to work." He also concluded that she suffered from "chronic neuropathic lower extremity pain" and had "likely . . . developed diabetic heart disease (diabetic cardiomyopathy) which require[d] further testing for confirmation[.]" (Tr. 212-13). When the claimant returned to see Dr. Trow in February 2007 and April 2007, she was found to be doing the same and still suffering from chronic neuropathy as a result of her diabetes (Tr. 339, 340-41). In July 2007, the claimant was assessed with hypertension (poor control), diabetes (poor control), dyspnea, and peripheral edema (Tr. 345).

Dr. Trow completed a physical medical source statement for the claimant in January 2007. He determined the claimant could sit for ten to thirty minutes at one time and for a total of two hours in an eight-hour workday, stand for a total of ten to thirty minutes in an eight-hour workday, and could not walk. She could lift eleven to twenty pounds occasionally but could never lift anything above twenty pounds. She could not carry up to five pounds. The claimant had limited use of both feet for repetitive movements and in pushing and pulling leg controls, but the use of her hands was not limited. She could occasionally crawl and reach but never bend, squat, or climb. With regard to environmental factors in the workplace, the claimant had marked restrictions for unprotected heights, being around moving machinery, exposure to marked changes in temperature and humidity, and vibrations. She had mild restrictions for driving and moderate restrictions for exposure to dust, gases,

and fumes. Dr. Trow indicated that the claimant's limitations were supported by objective findings of nil sensation in the lower extremities (mid-calf and below), nil ankle reflexes, and an active ulcer and edema of the lower left leg. He further noted that the claimant complained of fatigue with shortness of breath, and her cardiac examination revealed tachycardia at rest with gallop rhythm compatible with diabetic cardiomyopathy (Tr. 209-11).

Medical opinions from the claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'" *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). Even if a treating physician's opinions are not entitled to controlling weight, the ALJ must nevertheless determine the proper weight to give them by analyzing the factors set forth in 20 C.F.R. § 404.1527. *Id.* at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] 404.1527.'"), *quoting Watkins*, 350 F.3d at 1300. The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).  Finally, if the ALJ decides to reject a treating physician's opinion entirely, "he must . . . give specific, legitimate reasons for doing so[,]" *id.* at 1301 [quotation marks omitted; citation omitted], so it is "clear to any subsequent reviewers the weight [he] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300 [quotation omitted].

The ALJ mentioned Dr. Trow's completion of a physical medical source statement limiting the claimant to less than sedentary work and discussed his conclusion that she could not work because she was permanently and totally disabled by her left lower extremity.  He summarized the requirements for assigning controlling weight to a medical opinion, the factors to apply when a determination is made that an opinion is not entitled to controlling weight, and that a treating source opinion given on an issue reserved to the Commissioner is not afforded controlling weight or any special significance.  *See* 20 C.F.R. § 404.1527.  He then determined that Dr. Trow's opinion was not entitled to controlling weight because: (i) "[t]he record does not indicate what records Dr. Trow examined or what objective tests he based his opinion on"; and, (ii) Dr. Trow's opinion "[was] in conflict and inconsistent with [his] own treatment records and the other substantial evidence as noted above." (Tr. 18).

The undersigned Magistrate Judge finds the ALJ's evaluation of the opinion evidence from Dr. Trow is deficient for several reasons.  First, although Dr. Trow's conclusion that the claimant was unable to work *was* in fact an issue reserved to the Commissioner, *see* 20 C.F.R. § 404.1527(e)(1), (2) (noting that opinions that claimant is disabled or that an

impairment meets or equals the requirements of any impairment in the Listing of Impairments "are not medical opinions, as described in paragraph (a)(2) of this section, but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."), Dr. Trow also rendered opinions about the claimant's functional limitations in the medical source statement, which the ALJ was required to analyze under the standards set forth above. *See*, *e. g.*, 20 C.F.R. § 404.1527(a)(2) ("Medical opinions are statements from physicians . . . that reflect judgments about the nature and severity of . . . impairment(s), including . . . symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and . . . physical or mental restrictions."). While the ALJ *did* mention Dr. Trow's completion of a medical source statement, he did not discuss any of the specific functional limitations imposed on the claimant by Dr. Trow or why he rejected them (Tr. 18).

Second, the ALJ determined Dr. Trow's opinion was not entitled to controlling weight because it was "inconsistent with Dr. Trow's own treatment records and the other substantial evidence as noted above." (Tr. 18). *See Langley*, 373 F.3d at 1119 (noting that medical opinions from a claimant's treating physician are entitled to controlling weight if they are "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record.'"), *quoting Watkins*, 350 F.3d at 1300. "'Medical evidence may be discounted if it is internally inconsistent or inconsistent with other evidence[,]'" *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007), *quoting Knight v. Chater*, 55 F.3d 309, 314 (7th Cir. 1995), but in order to discount the evidence, the

ALJ must specify and explain what the inconsistencies in the evidence are. *See*, *e. g.*, *Wise v. Barnhart*, 129 Fed. Appx. 443, 447 (10th Cir. 2005) ("The ALJ also concluded that Dr. Houston's opinion was inconsistent with the credible evidence of record, but he fails to explain what those inconsistencies are.") [quotation marks and citations omitted] [unpublished opinion]; *Langley*, 373 F.3d at 1123 ("Because the ALJ failed to explain or identify what the claimed inconsistencies were between Dr. Williams's opinion and the other substantial evidence in the record, his reasons for rejecting that opinion are not 'sufficiently specific' to enable this court to meaningfully review his findings."), *quoting Watkins*, 350 F.3d at 1300. Here, the ALJ failed to do this.[2]

Finally, the ALJ failed to conduct a proper evaluation of Dr. Trow's opinions under the second stage of the treating physician analysis, *i. e.*, the ALJ considered only one (not all) of the factors set forth in 20 C.F.R. § 404.1527, *e. g.*, as discussed above, he found Dr. Trow's opinion inconsistent with other evidence. Although he briefly mentioned the other factors, it does not appear the ALJ applied them, as he was required to do. *See Langley*, 373 F.3d at 1119 ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using *all* of the factors provided in [§] 404.1527.'") [emphasis added], *quoting Watkins*, 350 F.3d at 1300. *See also Hamlin v. Barnhart,* 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must

---

[2] Dr. Trow's treatment notes from January 2007 include objective findings of a marked decrease in sensation in the mid-calf of claimant's legs to her feet, nil ankle jerks, an abnormal gait, and exertional dyspnea and gallop and arterial cardia suggestive of diabetic cardiomyopathy (Tr. 212). These findings would seem to provide support for at least some of the limitations Dr. Trow included in the medical source statement.

. . . consider a series of specific factors in determining what weight to give any medical opinion.") [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services,* 52 F.3d 288, 290 (10th Cir. 1995). *But see Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("That the ALJ did not explicitly discuss all the § 404.1527(d) factors for each of the medical opinions before him does not prevent this court from according his decision meaningful review. Ms. Oldham cites not law, and we have found none, requiring an ALJ's decision to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion."). Once the ALJ has considered all the relevant factors, he should specify the weight assigned to Dr. Trow's opinion. *See*, *e. g.*, *Watkins*, 350 F.3d at 1300 (noting that it must be "clear to any subsequent reviewers the weight [given] to the treating source's medical opinion and the reasons for that weight") [quotation omitted]. *See also Langley*, 373 F.3d at 1120-21 (finding that the ALJ erred by failing to evaluate what lesser weight a treating physician's opinion should be given).

Accordingly, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis of Dr. Trow's opinions. If the ALJ subsequently determines that additional limitations should be included in the claimant's RFC, he should then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The undersigned Magistrate Judge finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial

evidence. Accordingly, the Magistrate Judge RECOMMENDS that the ruling of the Commissioner of the Social Security Administration be REVERSED and REMANDED for further proceedings as set forth above. Any objections to this Report and Recommendation must be filed within ten days.

      **DATED** this 17th day of June, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**